UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MYVITANET.COM, et al.,

       Plaintiffs,                     Case No. 2:08-cv-48
                                          JUDGE GREGORY L. FROST
   v.                               Magistrate Judge Terence P. Kemp

MARK KOWALSKI, et al.,

       Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' amended motion for a temporary restraining order (Doc. # 1) and Defendant Mark Kowalski's memorandum in opposition (Doc. # 8).  For the reasons that follow, this Court finds the motion for a temporary restraining order well taken.

### I.  Background

The following facts are set forth for the limited purpose of addressing the immediate motion before the Court.  The parties should note that any findings of fact and conclusions of law made by a district court in addressing a request for injunctive relief are not binding at a trial on the merits.  *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

In July 2006, Defendant Mark Kowalski ("Defendant"), a chiropractor, entered into an asset purchase agreement with Mother Nature, Inc. and MyVitaNet.com Acquisition Corp., in which the companies purchased Defendant's Internet business, MyVitaNet.com.

MyVitaNet.com was and is an Internet website that offers for sale various nutritional and health products. The sale called for the buyers to pay Defendant a total purchase price of $2,050,00.00, with $1,150,000.00 paid at closing and the remaining amount to be paid in installments.

Section 5.7 of the July 14, 2006 Asset Purchase Agreement contained a non-competition agreement. This section reads in relevant part:

> 5.7 <u>Noncompetition.</u>
>
> (a) (i) As additional consideration for Buyer's agreement to purchase the Acquired Assets and pay the Purchase Price, Seller has agreed to the noncompetition provision set forth in subparagraph (ii) below (the "**Seller Restrictive Covenant**"). Seller represents and admits that the Seller Restrictive Covenant is being entered into in connection with Seller's sale of the Acquired Assets and in the absence of these covenants Seller understands that the sale would not be consummated by Buyer.
>
> (ii) For a period of four (4) years following the Closing Date, except as provided in the Consulting Agreement and except in the event that Seller becomes the shareholder of Buyer pursuant to the provisions of the Pledge Agreement, Seller will not, directly or indirectly, engage in the sale of nutritional and health products via the Internet. Further, Seller will not at any time following the Closing Date use, directly or indirectly, customer lists or any of the other Acquired Assets. . . . Nothing herein shall prohibit Seller from engaging in the sale of nutritional and health products from Seller's actual physical place of employment or doctor's office without using the Internet.

(Plts. Ex. A, at 13-14 § 5.7.)

On January 16, 2008, Plaintiffs, Mother Nature, Inc. and MyVitaNet.com, filed the instant action against Defendant and five John Doe defendants asserting a number of claims. Among these claims was a cause of action for breach of contract arising from Defendant's purported repeated disregard of the covenant not to compete (and other claims target the

covenant as well).[1] Plaintiffs also filed and then refiled as amended a motion for a temporary restraining order in this action. (Doc. # 1.) Plaintiffs represented that Defendant had violated and was continuing to violate the covenant not to compete by engaging in a competing Internet business.

Pursuant to S.D. Ohio Civ. R. 65.1(a), the Court therefore held an informal preliminary telephone conference on January 16, 2008, with counsel for Plaintiffs and counsel for Defendant. As a result of discussions held at that conference, the Court set the amended motion for a temporary restraining order for an oral hearing on Friday, January 18, 2008, and by agreement of the parties, Plaintiffs were ordered to pay into the Court the quarterly installment payment due to Defendant. The Court subsequently conducted the oral hearing, which included testimony, and took the matter under advisement.

## II. Discussion

**A. Standard Involved**

The Sixth Circuit Court of Appeals has explained the inquiry involved in addressing either a motion for a temporary restraining order or for a preliminary injunction:

> "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110

---

[1] Defendant had previously breached the covenant in regard to another website, but voluntarily discontinued his efforts.

F.3d 318, 322 (6th Cir.1997) (citations omitted)).  *See also Edward Rose & Sons*, 384 F.3d at 261 (quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).  The court of appeals has further explained that a district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved.  *Edward Rose & Sons*, 384 F.3d at 261.

**B.  Analysis**

The first factor this Court must weigh in determining whether temporary injunctive relief is warranted is whether Plaintiffs have established a substantial likelihood or probability of success on the merits.  Having considered the written submissions in this case, the testimony presented, and the exhibits entered into the record, the Court concludes that Plaintiffs have demonstrated a sufficient likelihood of prevailing on the merits.

The Sixth Circuit Court of Appeals has explained the inquiry this Court must undertake to decide the threshold issue of whether a non-compete agreement is enforceable:

> Under Ohio law, a court must examine a non-competition covenant to determine the reasonableness of the restrictions.  *Raimonde v. Van Vlerah,* 42 Ohio St.2d 21, 325 N.E.2d 544, 547 (1975).  To make that determination, the court should consider the absence or presence of a long list of factors: whether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and experience, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant destroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment.  *Id.*
>
> The *Raimonde* court summarized these factors by concluding that a non-competition covenant "is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public."  *Id.*  If the covenant does impose unreasonable restrictions, the court still must enforce the covenant "to the extent necessary to

4

protect the employer's legitimate interests." *Id.*

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). *See also Rogers v. Runfola & Associates*, 57 Ohio St. 3d 5, 8, 565 N.E.2d 540, 543 (1991).

Applying the inquiry described above, the Court concludes that the non-compete agreement involved in this case is reasonable as a matter of law.[2] The non-competition covenant in this action imposes a four-year temporal limitation, but still permits Defendant to work in the same basic industry in the same state. The agreement also permits Defendant to sell nutritional and health products without limitation anywhere but on the Internet, and Defendant's counsel implied that Defendant has taken advantage of this allowance by selling such products at a physical location. Additionally, prior to selling the website operation, Defendant obtained expertise in the creation and operation of an Internet-based health care and nutritional product business. Following the sale, Defendant was involved in Plaintiffs' operations, first as a consultant, then as an employee, and finally as an employee who held options in the enterprise. Defendant's involvement thus indicates continuing knowledge of information as to the inner workings of Plaintiffs' operation (which is built in part on the business he founded and then sold).

The limited covenant also bars only unfair competition, to the extent it seeks to preclude Defendant from acting as a direct competitor in a specific market (i.e., Internet sales). This is a condition to which he agreed and for which he received and continues to receive compensation, as well as sustained employment until his latest breach of the agreement. As noted, the covenant

---

[2] The Court notes that Defendant has challenged few if any of the restrictions and instead argues that he is not engaging in violative activity.

does stifle Defendant's involvement in a select market–selling nutritional and health products over the Internet–but the non-compete clause permits him to apply his skills and experience in other markets and even on the Internet in regard to other types of products.

Given the terms of the 2006 sale, the benefit of the non-compete agreement to Plaintiffs is not unduly disproportionate to Defendant's detriment. The covenant does not destroy Defendant's sole means of support because he remains able to engage in the sale of nutritional and health products by other means in non-Internet markets, he remains free to sell other types of products on the Internet, and he remains free to engage in his chiropractic practice. The covenant was also not incidental either to the sale of the company or to Defendant's employment with Plaintiffs following the sale. Rather, the covenant was wholly intertwined with both; it constituted a means by which Plaintiffs could protect their investment and was in part what the purchaser paid for. The parties' Asset Purchase Agreement in fact provides that "Seller represents and admits that the Seller Restrictive Covenant is being entered into in connection with Seller's sale of the Acquired Assets and in the absence of these covenants Seller understands that the sale would not be consummated by Buyer." (Plts. Ex. A, at 13 § 5.7(a)(i).)

Under Ohio law, a non-compete clause will not be enforced if the company seeking enforcement previously breached a material provision of the contract containing the covenant not to compete. *Ehrhardt v. Hamilton Fan & Blower Co.*, Nos. C-850265 & C-850266, 1986 WL 3423, at *6 (Ohio App. 1st Dist. Mar. 19, 1986). There is no evidence of such a breach here, and Plaintiffs in fact complied with the obligation to pay into the Court the January 2008 quarterly installment payment due Defendant. The Court therefore concludes that the covenant is reasonable and enforceable.

This of course does not necessarily mean that a temporary injunction is warranted here. Defendant disputes that Plaintiffs can succeed in proceeding on the covenant because he has not violated the agreement. Via argument–Defendant did not testify and did not introduce any witnesses–Defendant challenges Plaintiffs' likelihood of success on a number of grounds. Defendant posits, for example, that he is simply not directly or indirectly "engaged in" the sale of nutritional and health products via the Internet. The self-serving construction Defendant attempts to give the operative language of the non-compete covenant is too narrow, however. The covenant does not reach Defendant only if he owns a competing business or draws revenue from a competing website, even if a silent partner or not an owner or employee at all.[3] Rather, the covenant prohibits Defendant from directly or indirectly engaging in Internet competition. Engaging in includes compensated and uncompensated involvement, as well as active and passive involvement. Thus, if–as it appears to be–Defendant assisted others, such as his sister, in setting up a competing website or websites, he has engaged in precluded selling. The evidence indicates that Defendant has access to information regarding revenue of competing sites that he would not have access to but for prohibited involvement in the business of these other operations. The evidence also indicates that Defendant engaged in helping establish a website in the name of his sister, even going to far as to use Plaintiffs' computer to store material related to this prohibited assistance, a merchant account application for www.gardenofenon.com that listed Amy Kowalski as owner. It does not matter to what degree these other websites are more successful than Plaintiffs; what matters is that by involving himself in the business of these

---

[3] Plaintiffs' Whitney Anderson testified that Defendant, while not disputing that he aided in the operation of at least one website, stated in a telephone conversation that Defendant did not receive money from the website.

competing Internet ventures, Defendant engaged in improper conduct in contravention of his covenant not to compete that is hurting Plaintiffs.

The unsuccessful–and dubious–parsing of the covenant language is Defendant's best argument targeting the merits of this action. The Court need not and does not devote considerable space to Defendant's remaining arguments, given that they are largely irrelevant.

For example, Defendant targets the factual foundation of Plaintiffs' beliefs. His counsel devoted considerable time and effort to seeking to impeach Plaintiffs' witnesses and to portraying Plaintiffs as prematurely filing this action and the injunctive relief motion without first having developed an adequate factual basis for their contentions. Defendant's counsel in fact returned again and again to the fact that Plaintiffs' pleading and motion failed to identify by name the competing websites (identified at the hearing as www.gardenofenon.com and www.nationalvitamincenter.com).

This has not been a strictly paper proceeding, however, in that there was a hearing. Plaintiffs provided adequate facts to support the alleged breach of the covenant at the January 18, 2008 hearing, even if their prior briefing and pleading were fairly spartan in regards to alleging specific facts. What matters is what occurred at the hearing, not the imperfect form or content of the writings that led to that hearing. The hearing testimony supported the pleading and the motion, based in no small part on uncontroverted admissions Defendant made to Whitney Anderson during their telephone conversation. In addition to these admissions, the other evidence presented at the hearing, including the screenshots and address information, further aided Plaintiffs in meeting their burden of proof. Plaintiffs conducted an incomplete but adequate factual investigation and have linked Defendant to two websites, via the address of his

8

sister and an application he apparently completed in preparing at least one website. This is enough, even if more details can be filled in through subsequent discovery.

Similarly unsuccessful, as also discussed more fully below, is Defendant's argument that Plaintiffs' lack of specificity in regard to market share loss or lost financial revenue defeat the likelihood of Plaintiffs' success on the merits.

The second factor the Court must consider is whether Plaintiffs have demonstrated a risk of irreparable harm in the absence of a restraining order. They assert that continuing breach of the covenant presents irreparable injury that monetary damages cannot remedy. Defendant disputes this contention and points to the fact that Plaintiffs have failed to identify specifically how much market share they have lost during the course of the most recent alleged breach. The difficulty in proving such loss at this juncture is inherently difficult, but Plaintiffs' Cathy Ross testified that there had been a loss of market share. This Court credits that testimony. It is problematic if not impossible to state to a certainty what consequent share of the market Plaintiffs have lost or would continue to lose in the absence of injunctive relief. It is possible to conclude, however, that monetary damages would fail to make Plaintiffs whole for some if not all of their claims. Anderson testified that in the weeks preceding the hearing, when www.nationalvitamincenter.com was number one on Google and Plaintiffs had fallen to number three, Plaintiffs noted a significant drop in sales.

Moreover, implicit in a loss of customers is a loss of customer goodwill. The Sixth Circuit Court of Appeals has held that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. Similarly, the loss of fair competition that results from the breach of a non-competition covenant

9

is likely to irreparably harm an employer." *Basicomputer Corp.*, 973 F.2d at 512 (citations omitted). Thus, the second factor also weighs in favor of granting Plaintiffs' motion.

The third factor that the Court must consider is whether issuance of the requested injunction will cause substantial harm. In considering this factor, the Court must (1) balance the harm Plaintiffs would suffer if their request for a temporary restraining order were denied against the harm Defendant would suffer if an injunction were to issue, and (2) assess the impact a temporary restraining order might have on relevant third parties. *See Corporate Exp. Office Prods. v. Warren*, Nos. 01-2521 DBRE & 01-2667 DBRE, 2002 WL 1901902, at *27 (W.D. Tenn. May 24, 2002). Defendant failed to make much if any argument in regard to this factor and the foregoing concerns, electing instead to attack the form of the temporary restraining order motion, the pleading, and Plaintiffs' factual assertions.

The Court has already discussed the harm that Plaintiffs would suffer in the absence of an injunction. Therefore, the Court now turns to the harm that Defendants and other parties might suffer as a result of an injunction.

There is no apparent basis to conclude that issuance of a temporary restraining order would cause Defendant or others substantial harm, and to the extent that Defendant may incur some harm, that harm would be self-inflicted damage. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction

should not issue because of costs which it must incur in order to remedy its own misconduct"). To conclude otherwise would permit Defendant to breach the agreement and then claim that the harm flowing from that breach renders the breach excusable in the injunctive-relief context. That would be an unjust and illogical result. The third factor therefore also favors granting Plaintiffs' motion.

The fourth factor involved in today's analysis is whether issuance of the restraining order would serve the public interest. This case involves the sanctity of contract, in which large and small businesspeople alike are bound by the word they give and the obligations and restraints they voluntarily assume–and, in Defendant's case, obligations and restraints he was compensated for assuming. The evidence presented at this time weighs in favor of concluding that Defendant has apparently elected to ignore a substantial component of the contract he signed. The Court finds that the public interest in the enforcement of valid contracts and in promoting stability and certainty in business relationships would be served by granting a temporary restraining order here.

The Court has concluded that the covenant not to compete is, on balance, reasonable because it is no greater than is required for Plaintiffs' protection, does not impose undue (or unexpected) hardship on others, and is not injurious to the public. The Court has also concluded that Plaintiffs are entitled to temporary injunctive relief because (1) Plaintiffs appear likely to prevail on the merits of at least their covenant-related claim, (2) the loss of market share, the inherent loss of customer goodwill, the loss of fair competition, and the difficulty in calculating damages for prior and future conduct constitute a threat of irreparable harm to the company, (3) the harm prevented by issuance of a temporary injunction outweighs the possible harm to

Defendant and others, and (4) the public interest in the enforcement of valid contracts would be served by granting injunctive relief. *See Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) (discussing four prongs of test for injunctive relief). *See also Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F. Supp. 2d 1028 (N.D. Ohio 2003) (applying factors to covenant not to compete); *Hoover Transp. Services, Inc v. Frye*, No. C2-02-25, 2002 WL 31409888 (S.D. Ohio July 17, 2002) (same). The extant question is thus what, if any, bond the Court should require.

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order ... shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Although this language would appear to mandate a bond, the Sixth Circuit has explained that whether to require a bond is within the discretion of the Court. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). It is well settled that in light Rule 65(c) and "the inherent equitable power [of the Court] to condition an injunction on certain undertakings, including the posting of a security bond by the party seeking the injunction," *Division No. 1, Detroit, Bhd. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1225 (6th Cir. 1988) (citation omitted), the Court can require the posting of a security bond even if no party requests it.

No party addressed the issue of a bond at the January 18, 2008 hearing. Having considered the equitable circumstances of this case, the Court in its discretion concludes that no posting of a bond is warranted.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' amended motion for a temporary restraining order.  (Doc. # 1.)  The Court therefore **ORDERS**:

(1)  Defendant Kowalski is hereby **ENJOINED** from violating the non-compete agreement.  This includes engaging in the continuing ownership of, operation of,  and providing any form of assistance to any competing website, regardless of whether he draws revenue from that website.

(2)  Pursuant to Rule 65(c), the Court in its discretion does not require Plaintiffs to post a bond with the Clerk of Courts of the United States District Court for the Southern District of Ohio.

(3)  This temporary restraining order will expire at 11:59 p.m. on February 1, 2008, unless otherwise extended or vacated.  The parties should note that, once granted, a temporary restraining order can be extended beyond its initial duration for "good cause shown" or by the consent of "the party against whom the order is directed."  Fed. R. Civ. P. 65(b).  The rule requires that "[t]he reasons for the extension . . . be entered of record."  Fed. R. Civ. P. 65(b).

(4)  If Plaintiffs seek a preliminary injunction, Plaintiffs must file a motion for such injunctive relief in accordance with the local rules of this Court.  *See* S.D. Ohio Civ. R. 65.1(b) ("Applications for temporary restraining orders or preliminary injunctions shall be made in pleadings separate from the complaint and in accordance with this Rule").

(5)  In addition to issuing a temporary restraining order, the Court orders that Plaintiffs shall pay into the Court each quarterly installment payment due to Defendant Kowalski that arises during the course of this litigation.  The Court shall hold the payment in escrow.  This order follows the parties' prior agreement concerning the January 2008 payment.

**IT IS SO ORDERED**.

                                                /s/ Gregory L. Frost
                                     GREGORY L. FROST
                                     UNITED STATES DISTRICT JUDGE