UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MYVITANET.COM, et al.,**

      **Plaintiffs,**         Case No. 2:08-cv-48
                                              JUDGE GREGORY L. FROST
      v.                  Magistrate Judge Terence P. Kemp

**MARK KOWALSKI, et al.,**

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant Mark Kowalski's motion to dismiss (Doc. # 27), Plaintiffs' memorandum in opposition (Doc. # 46), and Kowalski's reply memorandum (Doc. # 56). For the reasons that follow, this Court finds the motion well taken in part.

**I.  Background**

In July 2006, Defendant Mark Kowalski, a chiropractor, entered into an asset purchase agreement with Mother Nature, Inc. and MyVitaNet.com Acquisition Corp., in which the companies purchased Kowalski's Internet business, MyVitaNet.com. MyVitaNet.com was and is an Internet website that offers for sale various nutritional and health products. The sale called for the buyers to pay Kowalski a total purchase price of $2,050,00.00, with $1,150,000.00 paid at closing and the remaining amount to be paid in installments.

Section 5.7 of the July 14, 2006 Asset Purchase Agreement contained a non-competition agreement. (Doc. # 21 ¶ 10; Doc. # 21-2, at 17-18.) On January 16, 2008, Plaintiffs, Mother Nature, Inc. and MyVitaNet.com, filed the instant action against Kowalski and five John Doe

1

defendants asserting a breach of contract arising from Kowalski's purported repeated disregard of this covenant not to compete. After the Court concluded that Plaintiffs had a likelihood of success of proving that Kowalski had engaged in competition in violation of this covenant, Plaintiffs obtained a temporary restraining order and a preliminary injunction. (Docs. # 10, 53.)

In an amended complaint, which specifically named two other defendants, Plaintiffs continues to assert the breach of contract claim (Count I), as well as claims for intentional misrepresentation (Count II), fraud (Count III), violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") (Count IV), and violation of the RICO statute 18 U.S.C. § 1962(c) (Count VI).[1] (Doc. # 21 ¶¶ 15-33.) Kowalski has filed a motion to dismiss Counts II, III, IV, and VI.[2] (Doc. # 27.) The parties have completed briefing on the motion, which is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Kowalski moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires an assessment of whether Plaintiffs have set forth claims upon which this Court may grant relief. Under the United States Supreme Court's recent articulation of the analytic standard involved in applying this rule, this Court must construe the amended complaint in favor of Plaintiffs, accept the factual allegations contained in the amended complaint as true, and

---

[1] There is no Count V in the amended complaint. (Doc. # 21.) It appears that Plaintiffs have misnumbered their counts.

[2] The pending motion is Kowalski's second motion to dismiss these claims. Previously, Kowalski had filed a motion to dismiss directed to the original complaint, but the Court issued a March 21, 2008 Order recognizing that motion as moot after Plaintiffs filed their amended complaint, which superceded the original pleading. (Doc. # 26.)

determine whether Plaintiffs' factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974; *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." *Id.* (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990)).

**B. RICO Claim (Counts IV, VI)**

Kowalski moves for dismissal of the two RICO counts asserted in the amended complaint on the grounds that Plaintiffs have failed to present more than conclusory language that is insufficient to state a RICO claim. The amended complaint provides in relevant part:

> 27. A racketeering enterprise exists under which Defendant Kowalski to maximize his income has engaged in a scheme to defraud Plaintiffs. The enterprise operates through the internet activities of Mark Kowalski, Amy Kowalski and Brian Allard.. Mark Kowalski combined, conspired, confederated and agreed with Dr. Brian Allard and Amy Kowalski to devise and intent [*sic*] to devise a scheme and artifice to defraud Plaintiffs as to a material matter and to obtain money and property by means of false and fraudulent pretenses, representations, and promises by causing signals and sounds to be transmitted by wire in interstate and foreign commerce, for the purpose of executing and attempting to execute the scheme and artifice, as set forth herein. The enterprise has an organizational structure and policies designed to accomplish the following goals:
>
> > a) The first goal of the racketeering enterprise is to operate one or

3

     more legal entities, lowpricesandmore.com, gardenofenon.com and nationalvitamincenter.com, to conduct a business scheme to defraud Plaintiffs;

  b) The second goal of the racketeering enterprise is to attract business over the internet notwithstanding Mark Kowalski having affirmatively agreed not to do so;

  c) The third goal of the racketeering enterprise was for Mark Kowalski to enter into a contract with Plaintiffs with the promise of no competition;

  d) The fourth goal of the racketeering enterprise is to use the funds from Plaintiff to enrich Defendants while simultaneously undermining Plaintiffs.

28. The enterprise has a history of involvement within and without Ohio by virtue of its Internet operations.

29. The enterprise is engaged in interstate commerce and its activities have a substantial effect on interstate commerce as follows:

  a) The enterprise solicits and receives money from customers from state other than Ohio.

  b) The defendants utilize the means of the internet, interstate telephone calls and mail across state lines in the regular course of business to communicate among the out of state customers and to received payment.. [*sic*]

. . .

31. Defendants, individually and collectively, through their control of the enterprise, violated 18 U.S.C.A. § 1962(c) by conducting the enterprise's affairs through a pattern of racketeering activity as defined in 18 U.S.C.A. § 1961(1)(B) consisting of numerous acts of mail and wire fraud in violation of 18 U.S.C.A. §§ 1341 and 1343.

32. Defendants committed the following predicate acts: Defendant Mark Kowalski purported to refrain from competition with Plaintiffs, obtained payment and simultaneously engaged in a competing enterprise.  Mark Kowalski has engaged in this conduct on repeated occasions.  Specifically, beginning at or near the time of executing the APA, Defendant Mark Kowalski established, operated or assisted in the establishment of at least three competing websites, lowpricesandmore.com, naturalvitamincenter.com and gardenofenon.com.  Mark

>Kowalski enlisted the aid and assistance of Amy Kowalski and Brian Allard, both of whom were aware of Mark Kowalski's agreement not to compete, [sic] with Plaintiffs to circumvent the terms of the APA so as to unfairly compete with Plaintiffs, undermine their revenue and to undercut Plaintiffs' goodwill and market share, while simultaneously collecting compensation and other funds from Plaintiffs.

(Doc. # 21 ¶¶ 27-33.)  Citing specifically paragraph 32 of the reproduced language of the amended pleading, Kowalski argues that the pleading fails to set forth requisite particularized facts.

It is well settled that in order to state a RICO claim, a pleading must set forth the following elements: " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' "  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985)).  A complaint that fails to describe facts establishing any of these elements fails to state a RICO claim.  *Id.*  Therefore, the Sixth Circuit has explained:

>To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a "pattern of racketeering activity" consisting of at least two predicate acts of racketeering activity occurring within a ten-year period.  18 U.S.C. § 1961(5).  The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343).  18 U.S.C. § 1961(1).

*Id.*  A plaintiff must plead the predicate acts with particularity under Federal Rule of Civil Procedure 9(b).  *Id.*

Here, Plaintiffs' amended complaint contains numerous conclusions and only general allegations of mail and wire fraud.  Paragraph 27, for example, asserts that Defendants caused signals and sounds to be transmitted by wire, but that paragraph fails to offer any particular

5

details.  Similarly, although paragraph 32 purports to set forth predicate acts, the paragraph does not contain specific instances of mail or wire fraud.  This fails to meet the mandated pleading standard.  *See Leeds v. City of Muldraugh, Meade County, Ky.*, 174 F. App'x 251, 254 (6th Cir. 2006) ("[T]he district court properly dismissed the plaintiffs' RICO claims because they failed to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  The plaintiffs failed to describe any specific acts of fraud, and the information missing from the allegations is part of the public record.  Therefore, there is no excuse for the lack of specificity in the allegations, and the plaintiffs failed to state a RICO cause of action.").

Plaintiffs disagree and direct this Court in their memorandum in opposition to paragraph 31 of the amended complaint.  But that paragraph only asserts that "numerous acts of mail and wire fraud" occurred; neither that paragraph nor any other identifies the acts constituting mail or wire fraud with any specificity.  Plaintiffs' RICO pleading is therefore dissimilar to the sufficient pleading involved in *Wuliger v. Star Bank*, No. 3:02-cv-1513, 2008 WL 2323887 (N.D. Ohio June 4, 2008).  The district court in *Wuliger* held that an amended complaint that listed over 100 financial transactions and "indicat[ed] the account name, account number, date, amount transferred and recipient" involved satisfied the Rule 9(b) particularity requirement for stating a RICO claim.  *Id.* at *2.  In contrast to *Wuliger*, the pleading in the instant case is more similar to the complaint in *Herrick v. Liberty League International*, No. 1:07-cv-936, 2008 WL 2230702 (S.D. Ohio May 28, 2008).  The *Herrick* complaint stated:

> Pursuant to their fraudulent plan the Defendants knowingly executed a scheme or artifice to obtain the moneys, funds, credits, assets, or other property under the control of various financial institutions by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. § 1344 in that the scheme, among other things, caused Plaintiff's bank to transfer funds from Plaintiff's

account to the Defendants.

*Id.* at *3.  Analyzing this language under Rule 9(b), the *Herrick* district court concluded that these "allegations lack particularity in that they do not identify the bank or banks defrauded, the dates funds were transferred, or the amounts that were transferred." *Id.* at *4.  Likewise, the amended complaint *sub judice* fails to identify any sales or shipments, fails to provide details of any web transaction, and fails to indicate any actual specific instances of conduct by Kowalski that constitutes wire or mail fraud.  This is insufficient.  *See Polymer Dynamics, Inc. v. Bayer Corp.*, No. CIV. A. 99-4040, 2000 WL 1146622, at *3 (E.D.Pa. Aug. 14, 2000) (concluding that a plaintiff had pled a RICO claim sufficient to survive a motion to dismiss because it had set forth numerous predicate mailings and interstate wire communications made by defendant). Kowalski has presented in his briefing a litany of authority indicating that such a lack of any specificity fails to satisfy the Rule 9(b) particularity requirement, which means that the amended complaint fails to present a RICO claim upon which this Court can grant relief.

In reaching this conclusion, it is important to note the limited nature of the amended pleading and its effect on today's analysis.  In defending this pleading, Plaintiffs' memorandum in opposition devotes considerable attention to arguing that Plaintiffs have sufficiently pled a RICO conspiracy claim under 18 U.S.C. § 1962(d).  As Kowalski notes, however, Plaintiffs' amended complaint does not set forth a claim under § 1962(d).

Count IV of the amended complaint is labeled as a claim under RICO, described as "18 U.S.C.A. §§ 1961 *et seq*."  (Doc. # 21 ¶ 24.)  Count VI later states that "Defendants . . . violated 18 U.S.C.A. § 1962(c)."  (Doc. # 21 ¶ 31.)  Then, in their memorandum in opposition, Plaintiffs assert that they "have alleged four causes of action: breach of contract; intentional

7

misrepresentation; fraud; and *a* violation of the Racketeer Influenced and Corrupt Organization Act 28 U.S.C. § 1962 (federal RICO)." (Doc. # 46, at 1 (emphasis added).) This latter description of Plaintiffs' claims sensibly tracks the pleading; Count IV reads as a background section on RICO as opposed to setting forth a claim, while Count VI sets forth one identified claim under § 1962(c).

In light of the foregoing, this Court agrees with Kowalski that Plaintiffs cannot evade dismissal by using their memorandum in opposition to assert for the first time a RICO claim under § 1962(d). Today's decision is therefore limited to addressing that which is actually at issue: the sole RICO claim asserted in the amended complaint. To the extent that the amended complaint can be read as asserting RICO claims in both Count IV and Count VI, these are the same § 1962(c) claim, pled inartfully. Moreover, to the extent that any strained reading of the amended complaint could find the assertion of a § 1962(d) claim, the failure of the 1962(c) claim means that any contingent claim asserted under § 1962(d) would necessarily fail as well. *See Herrick*, 2008 WL 2230702, at *6 (citing *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999); *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 495 (6th Cir. 1990)). The Court must therefore dismiss both Count IV and Count VI.

### C. Fraud Claims (Counts II, III)

Kowalski also moves for dismissal of Plaintiffs' state law claims for intentional misrepresentation and fraud. He argues that, similar to the RICO claim discussed above, Plaintiffs have failed to plead these claims with the requisite particularity under Rule 9(b). Kowalski also asserts that Plaintiffs cannot pursue these two claims in light of Ohio's economic loss doctrine.

8

Addressing the former argument first, this Court concludes that dismissal of the intentional misrepresentation and fraud claims is not warranted on the ground of lack of particularity. As discussed above, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under this standard, Kowalski reasons, dismissal is warranted here because Plaintiffs have failed to allege where the alleged fraud occurred, the *specific* statements or acts constituting fraud Kowalski allegedly made, and the fraudulent intent and identity of the parties involved.

The Sixth Circuit has explained that "[s]o long as a [party] pleads sufficient detail–in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud–to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States v. Ford Motor Co.*, No. 07-1474, 2008 WL 2663746, at *5 (6th Cir. July 9, 2008). Plaintiffs argue that they have provided sufficient particularized pleading in regard to these requirements, and the Court agrees.

Although Kowalski is correct that Plaintiffs have failed to provide some specific information, such as identifying the URL's he purportedly withheld, the amended pleading nonetheless provides notice that Kowalski represented at the time of the signing of the purchase agreement that he would not compete; by signing the agreement he made this representation, and Kowalski told Plaintiffs' officers Whitney Anderson and Cathy Ross on July 17, 2006 that he would observe the noncompete provision. The amended pleading specifically references the time of the signing in regard to Count II (Doc. # 21 ¶ 21) and the day of the signing in regard to Count III (Doc. # 21 ¶ 20).

The amended pleading does not expressly indicate the place at which the purported misrepresentations took place.  But that pleading does identify the place implicitly; it was at the signing, a place known both to Plaintiffs, which had two officers sign the agreement, and obviously to Kowalski.  Thus, by logical implication, Plaintiffs have pled the place of the alleged fraud and intentional misrepresentation.  Rule 9(b) does not require pleading by magic words or analysis without common sense.  Rather, the rule requires sufficient particularity as to essential components of claims of fraud so as to permit a defendant to provide a meaningful answer and to proceed with developing a defense.  Plaintiffs have satisfied this standard and to conclude otherwise would be to engage in a disingenuous game of "gotcha" litigation in which a pleading is neither read within context nor with attention to the obvious.

Plaintiffs have also pled fraudulent intent sufficiently.  Rule 9(b) permits a plaintiff to plead intent generally, and the fact that the amended complaint does not identify specific URL's does not negate those portions of the complaint that assert intent.  The pleading similarly presents the content of the alleged fraudulent misrepresentations, the nature of the alleged scheme, and the resulting injury sufficiently.

Kowalski's last point is that the amended complaint fails to identify the identity of the parties involved because it references only "Plaintiffs' officials" in Count II.  (Doc. # 21 ¶ 18.)  The next count identifies two officials, but there is no incorporation of subsequent paragraphs in Count II.  (Doc. # 21 ¶ 20.)  Nevertheless, even in light of this technicality, it is clear what conduct Plaintiffs target.  Either they meant Anderson and Ross in Count II, or they meant all of the officials of Plaintiffs' operations.  The context of the pleading points to the former.

This Court concludes that Plaintiffs have satisfied Rule 9(b).  This leaves Kowalski's

argument that Ohio's economic loss doctrine demands dismissal of the intentional misrepresentation and fraud claims.  The doctrine provides that tort claims sounding in negligence and targeting purely economic loss are unavailable when the actionable conduct arises from a breach of a duty that would not exist but for the parties' contractual relationship. *Pavlovich v. National City Bank*, 435 F.3d 560, 569-70 (6th Cir. 2006).  The economic loss doctrine therefore "generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 414, 835 N.E.2d 701, 704 (2005).

Notably, Ohio courts have generally recognized the doctrine in regard to torts sounding in negligence.  *See id.*; *see also Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St.3d 1, 560 N.E.2d 206 (1990); *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989); *Mosser Constr., Inc. v. W. Waterproofing Co.*, No. L-05-1164, 2006 WL 1944934 (Ohio 6th App. Dist. July 14, 2006); *Laurent v. Flood Data Serv., Inc.*, 146 Ohio App.3d 392, 766 N.E.2d 221 (Ohio 9th App. Dist. 2001).  Kowalski has not directed this Court to any authority in which the Supreme Court of Ohio has applied the economic loss doctrine to bar claims for *intentional* torts.  In fact, he does not even acknowledge the potential limited application of the doctrine in his briefing.

Instead, Kowalski emphasizes that the crux of Plaintiffs' case is that he breached his contractual duty to refrain from competition.  This duty not to compete arises from the parties' contract, Kowalski argues, and not from any independent duty extrinsic to that agreement. Plaintiffs, who fail to address the economic loss doctrine in their memorandum in opposition, do not point to any tort duty owed to them by Kowalski that arises independently from the parties'

11

contract.

Citing the contractual duty, Kowalski reasons that the alleged fraud or intentional misrepresentation constitutes an unfulfilled promise upon which the breach of contract claim is based.  He argues that his purported misrepresentations that allegedly induced Plaintiffs to enter into the purchase agreement are not extraneous to the contract itself, but embody a key provision of the contract.  According to Kowalski, the purported fraudulent conduct is thus inseparable from the asserted breach of contract, and the claims present identical damages.  Therefore, Kowalski concludes, dismissal is mandated.

This Court disagrees.  The Court recognizes that a federal court must proceed carefully when deciding issues of state law.  Guided by this precept, this Court must examine whether the rationale animating the Ohio courts' application of the economic loss doctrine to negligence claims logically extends to intentional torts of the sort involved here.  On one hand, other jurisdictions have extended the economic loss doctrine to bar intentional tort claims.  In summarizing that body of law, one treatise has explained:

> In some jurisdictions, if a claim relates to fraud in the performance of contract, there can be no recovery of fraud damages unless the fraud claim is independent of the contract claim.  In other words, to recover damages for fraud, a claimant must show that the fraud does not relate to the breach of contract, or that the tort claim of fraud is not based on the parties' contractual relationship, but rests upon a breach of duty separate from the parties' contractual obligations.  ...
>
> Under the economic loss rule, the test to determine whether the contract claim is independent of the fraud claim revolves around performance of the contract.  *A cause of action for breach of contract cannot be converted into one for fraud by merely alleging that the defendant did not intend to fulfill the contract.*
>
> It has been held that the economic loss rule does not apply to torts that are independent of a contractual breach, and that therefore fraudulent inducement is not within the economic loss rule, at least if the misrepresentations that induce the

>claimant to enter the contract are extraneous to the contract itself.  However, it
>has also been held that fraudulent inducement to enter a contract does not support
>recovery of tort damages under this rule.

37 Am. Jur. 2d Fraud and Deceit § 369 (footnotes omitted; emphasis added).  On the other hand, however, select jurisdictions have concluded that under certain notably limited circumstances, the economic loss doctrine does not bar a claim for fraud in the inducement because that tort is an independent claim.  *See, e.g., Bradley Factor, Inc. v. United States*, 86 F. Supp. 2d 1140 (M.D. Fla. 2000).  *See also Polymer Dynamics, Inc.*, 2000 WL 1146622, at *7 n.5 (collecting cases going both ways on whether the doctrine applies to a fraud claim).

At least one Ohio court has recognized that some jurisdictions do not apply the doctrine to claims for intentional false representations, but that Ohio court did not have such a specific scenario before it.  *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt. Inc.*, 87 Ohio App.3d 613, 631, 622 N.E.2d 1093, 1105 (Ohio 8th App. Dist. 1993).  As Kowalski notes in his briefing, another Ohio court did have before it the issue of whether a fraud claim could exist apart from a related contract claim, however, and that court answered the question in the negative–although it did so without characterizing its holding as an application of the economic loss doctrine.  *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (Ohio 9th App. Dist. 1996).

When the Supreme Court of Ohio has not conclusively resolved an issue of state law, a federal court must turn elsewhere to divine that state's law.  The Sixth Circuit has identified the import of intermediate appellate state court decisions under such circumstances:

>In diversity cases, the federal courts must apply state law " 'in accordance
>with the then controlling decision of the highest state court.' "  *United States v.
>Anderson County, Tennessee*, 761 F.2d 1169, 1173 (6th Cir.1985) (quoting
>*Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 85

13

> L.Ed. 327 (1941)); *see Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue.  *See Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985) (citing cases).  "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989); *accord Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 617 (6th Cir. 1998).  This rule applies regardless of whether the appellate court decision is published or unpublished.  *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir. 2000); *Puckett*, 889 F.2d at 1485.

*Ziegler v. IBP Hog Market*, *Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).  Guided by this directive, the Court necessarily turns to the intermediate appellate courts of Ohio, which includes the *Textron* court and at least one other Ohio court that declined to permit a fraud claim when a breach of contract claim exists.  *See Texlon Corp. v. Smart Media of Delaware, Inc.*, Nos. 22098 & 22099, 2005 WL 2292800, at *13 (Ohio 9th App. Dist. Sept. 21, 2005).

The dispositive teaching from Ohio's intermediate courts, however, is that the economic loss doctrine is limited in its application.  Even assuming *arguendo* that the state law doctrine can potentially apply to intentional torts of the sort alleged in this action, case law provides that the doctrine ultimately cannot apply here.

In *Ferro Corporation v. Blaw Knox Food & Chemical Equipment Company*, 121 Ohio App.3d 434, 700 N.E.2d 94 (Ohio 8th App. Dist. 1997), for example, an Ohio court of appeals addressed the possible application of the economic loss doctrine to a negligence claim.  That court found the doctrine inapplicable because the damages sought extended beyond mere economic loss.  *Id.* at 443, 700 N.E.2d at 100.  Although its decision did not ultimately rest on the issue, the court of appeals also noted that the plaintiff's damages included an asserted loss of

14

customer good will and status in the industry involved, which the appellate court noted constituted "property damage" and not mere economic loss. *Id.* (citing *Lawyers Coop. Publ'g Co. v. Muething*, 65 Ohio St.3d 273, 603 N.E.2d 969 (1992)).

A federal court applying Ohio law reached a similar conclusion regarding the limited reach of that state's economic loss doctrine. In *Lifelink Pharmaceuticals, Inc. v. NDA Consulting, Inc.*, No. 5:07-cv-785, 2007 WL 2292461 (N.D. Ohio Aug. 7, 2007), a district court addressed whether the economic loss doctrine applied to a fraud claim so as to compel dismissal under Rule 12(b)(6). After outlining the contours of the doctrine and referencing *Textron*, the federal court concluded that "[t]he economic-loss rule does not bar fraud in this case because [the plaintiff] has alleged at least two injuries beyond mere economic loss." *Id.* at *5. Thus, in addition to recognizing an asserted breach of a duty extrinsic to the contract involved in that case, the court concluded that a dispositive factor was that the plaintiff "allege[d] an injury distinct from any contractual breach and–by extension–the economic loss rule." *Id.*

Another judicial officer in this District has also recognized that the nature of the damages sought can serve as a possible limitation on the scope of the doctrine. That judge explained:

> Before deciding whether the economic loss rule applies, the Court must first determine the nature of the alleged losses resulting from [the defendant's] alleged negligent misrepresentation. Damages are generally characterized as either personal injury, property damage, or economic loss. *E.g., HDM Flugservice GMBH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028 (6th Cir.2003); *Chemtrol,* 42 Ohio St.3d at 43. "Personal injury" involves, quite obviously, injury done to one's person. In an action involving the sale of goods, "property damage" includes damages to both the goods sold to the plaintiff and other property of the plaintiff. *E.g., Chemtrol,* 42 Ohio St.3d at 43. "Economic loss" includes both direct and indirect loss. *Id.* "Direct" economic loss includes the loss attributable to the decreased value of the product itself. "Indirect" economic loss includes the consequential losses sustained by the purchaser and can include items such as loss of time and profits. *Id.* at 44.

15

*National Mulch and Seed, Inc. v. Rexius Forest By-Products Inc.*, No. 2:02-cv-1288, 2007 WL 894833, at *6 (S.D. Ohio Mar. 22, 2007) (footnote omitted) (concluding in part that the doctrine applied because all the damages sought were for economic loss).

Here, as noted in their briefing and not challenged by Kowalski, Plaintiffs seek damages that include loss of goodwill. (Doc. # 46, at 1.) The Court previously recognized this component of the damages claim in its temporary restraining order. (Doc. # 10, at 9.) Plaintiffs have stated claims that seek damages that extend beyond only economic loss. Accordingly, this Court must conclude that Plaintiffs have stated plausible claims for intentional misrepresentation and fraud upon which this Court can grant relief. Dismissal of Count II and Count III is therefore not warranted.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Kowalski's motion to dismiss. (Doc. # 27.) The RICO component of the amended complaint is dismissed, and Plaintiffs' claims for breach of contract, intentional misrepresentation, and fraud remain pending in this case.

**IT IS SO ORDERED**.

                                          /s/ Gregory L. Frost
                                      GREGORY L. FROST
                                      UNITED STATES DISTRICT JUDGE